Good morning, Your Honors. My name is Deborah Bookout. I represent Petitioner Appellant Giovanni Valerio. I'm going to try and reserve two minutes for rebuttal. Okay. In Roe v. Flores-Otega, the Supreme Court held that when a counsel's constitutionally deficient performance deprives the defendant of an appeal he otherwise would have taken, then the defendant has made out a successful and effective assistance of counsel claim which entitles him to an appeal. For mere negligence? Constitutionally deficient performance. Well, what have you got besides the fact that his, I assume it was a public offender, I don't know, from the state system? In Valerio's case? Yeah. Well, in Valerio's case we have a finding by the district court that Mr. Valerio requested counsel to file an appeal and she didn't, and she failed to do so. Right. Which fits within the Flores-Otega rule wherein when that situation happens, then the defendant has made out a successful and effective assistance of counsel appeal deprivation claim and is entitled to an appeal. But you're seeking equitable tolling, are you not? Well, I'm seeking equitable tolling in the alternative. My first argument is that the plaintiff has failed to do so. Well, why don't we move, I don't think there's any question that she dropped the ball, or he, I don't know who it was, but his former lawyer dropped the ball. The question I have is, is merely overlooking or forgetting to file the notice of appeal the kind of extraordinary circumstances under Holland and under the Ninth Circuit cases to constitute the justification for the extraordinary relief of equitable tolling, or is it just simple negligence? I think it's beyond simple negligence in Mr. Valerio's case, given the diligence. Also, I think the Court has to look at the diligence prong before making that particular finding. But I don't think the Court needs to get to the equitable tolling argument because he's entitled to an ed podata finality, given his Lozada procedure, that would make his Federal petition timely. I'm sorry? What do we do with Randall? I think we can distinguish Randall. I think that there are facts in the Randall case that are distinct from those in Valerio's case which were critical to the Randall panel's decision. Most importantly, perhaps, is the fact that the Randall panel didn't have the benefit of the Nevada Supreme Court telling it that, in fact, the Lozada procedure is the equivalent of a direct appeal. It said it was the functional equivalent. Right. That's what Randall's counsel argued, and the Randall panel rejected it. But we have since then, and it's not discussed in the Randall opinion at all and it's not clear why, but the Nevada Supreme Court implemented or amended its rules of procedure in 2008, which specifically implement the Lozada procedure, and there's statements in that new rule which suggest that, in fact, the Lozada appeal is the equivalent of a direct appeal. It's the restoration of the appellate's rights under the circumstances of a different performance. In their decision in Mr. Valerio's case, they called it the functional equivalent the Lozada petition, the functional equivalent of a direct appeal. They do. And that isn't you don't have that finding in Randall. That's another difference between the two cases. Let me back you up for a second. They said, did they not, in Lozada that we lack jurisdiction if a timely notice of appeal is not filed. Yes, they did. Okay. So if the court does not have jurisdiction of the direct appeal because of the fact that there was no timely notice of appeal, then he must seek an equitable remedy, which I assume is provided under the post-conviction relief rules, and under Lozada, he is permitted to file an out-of-time challenge, raising the same claims that he would have raised on direct appeal. But the question I have is if they have no jurisdiction, then it's not a direct appeal. It's not reinstating Noot Pro Tonk as if he had timely filed. They are simply granting him an equitable remedy under the rules of habeas corpus to challenge his conviction. Is that a correct statement of Nevada law? No. I think it could be considered under some of the State's cases that it is in a correct statement, except that it, well, because it's a, it's a, it's a, it's a, it's a no answer. It's a no answer with some qualifications. The fact is, if, if the Lozada procedure that you, that you just discussed, Judge Talman, isn't the equivalent of a direct appeal, yes, it is an equitable remedy, but if it isn't the equivalent in, for all intents and purposes, of a direct appeal, when the deprivation of the defendant's appeal is due to deficient performance, then there's no remedy in Nevada for a defendant who's deprived of his appellate rights due to counsel's deficient performance, and Flores-Ortega says that cannot be the case. But I thought that's what Lozada was all about. Lozada gave him an equitable remedy. It essentially said, we'll grant you an opportunity to raise these claims on a collateral habeas challenge. And I agree. And under Flores-Ortega, that has to be the equivalent, whether it's an equity or not, the equivalent of a direct appeal for all intents and purposes. Well, maybe we're quarreling over whether or not it is a continuation of the direct appeal or it's an alternative remedy. And I think, in my mind, there's a distinction between a direct appeal and a collateral challenge. And what we don't have under Nevada law, as I understand the Nevada cases, is a reinstatement of the direct appeal. Instead, it is a separate collateral proceeding which allows him to raise arguments that could have and should have been raised in a direct appeal if he'd timely filed it. But because they have no jurisdiction to reinstate the direct appeal, they give him an alternative remedy. And if that's true, then as I read the Supreme Court cases, it's not akin to Jimenez where the Texas Court of Criminal Appeals, in essence, reset the clock, so to speak, back to the date that the notice of appeal should have been filed in the Texas criminal proceeding and the direct appeal was allowed to proceed. I have to disagree, and this is why. If the Lazada procedure is the way in which the Nevada Supreme Court or the Nevada courts restore lost appeal rights, and it is in habeas, but it is the restoration of a defendant's appellate rights when the defendant has been deprived of them through counsel's deficient performance. So we have that, and when there's language in Jimenez that talks about the restoration of appellate rights. But how is that different from the Federal system? I mean, we collaterally attack convictions all the time, but we don't refer to 2254 or 2255 habeas corpus proceedings as direct appeals. They're a distinct animal. They're essentially an equitable remedy to correct extraordinary errors. I would argue that if the 2255 was filed in order to restore the petitioner's appellate rights, then it would necessarily be considered the direct appeal for timeliness purposes. But it doesn't reopen the direct appeal. I don't think it has to. I don't think it has to for Jimenez to apply. And I'll go back to the rule change. In Rule 4c, there's language about the once the district court has made the determination that counsel was deficient in and deprived the defendant of an appeal, then the district court is ordered to file a notice of appeal from the judgment of conviction. That suggests that like in Jimenez's case, when the court ordered that the defendant be put back into like a non-crotonc order back to that place he would have been on direct appeal, that that procedure is in fact the equivalent of a direct appeal. The issue is whether when the defendant's rights are restored, when the conclusion of direct review occurs. And so in what I think Jimenez says is when, at this time, it's reset, when the corrective State process in restoring a defendant's appellate rights is concluded. It doesn't necessarily say, I don't think, there's specific language that there has to be a reinstatement or reopening of the appeal. Out-of-time collateral attacks for all kinds of reasons, not the least of which is the petitioner in a habeas case can show cause and prejudice why, you know, they didn't file a direct appeal on time and notwithstanding the fact that the 365 days has expired, we will allow them to proceed under habeas. But that's not continuing their direct appeal. But in Lozada, I think it is, because he's entitled to counsel, he's entitled to raise his direct appeal claims at that point, he's entitled to appeal an adverse decision in the district court to the Nevada Supreme Court, at which time his direct appeal rights are concluded. I've run out of time. You can save it. I'll give you a minute for rebuttal since we only have one case this morning. Let's hear from the State. Good morning, Your Honors. Dennis Wilson from the Attorney General's office on behalf of the Warden. Let me ask you a few questions. Do you see any tension in our case law between Thompson v. Leah and Randall? I don't. Why not? I think the difference in Thompson v. Leah, Jimenez v. Quarterman, and Jones v. Henry is that in all those cases, they went back into the direct appeal. They went right back into that proceeding, not a post-conviction collateral proceeding as they do in Nevada. They went right back in there and they said basically what they initially said was that we're going to dismiss your petition for direct review or your petition for review on direct appeal, but without prejudice as to the effect that Cunningham will have on that decision. So they allowed them to go right back into that. Let me ask you this. As I understand this Lozada petition, he can raise any issue that he could have raised on direct appeal, is that correct? Yes. Right? Now, in a non-Lozada State habeas petition, are there any limitations on the issues that he can raise? On a post-conviction petition? No. Yes. In a State post-conviction petition, that's not in this sort of unique animal of a Lozada type petition. The only claims he can raise on post-conviction are that his counsel was ineffective or his plea was not voluntary. Why isn't this, as we've said in, you know, we look what we looked for in Thompson was whether or not the proceeding would be, could possibly result in a modification of the judgment on any issue that could have been raised in a regular appeal. Well, I think the difference is that the case law says modification of the judgment through direct appeal. In Nevada, we're not modifying it through direct appeal in the direct appeal proceeding. That seems like a very formalistic kind of way of looking at it. And I think it is, but that's what they're saying. Because in Thompson, we look to the functionality part of it. Well, I think when they look at the functional equivalent language, they're basically saying when we give you the right to raise these direct appeal claims in your post-conviction, it's the same thing as a direct appeal. They're not saying that it's exactly the same. If it's the same thing as a direct appeal, why shouldn't the, you know, why shouldn't we treat it as a direct appeal for purposes of statutory, for purposes of tolling the, or for starting the Federal petition date? Well, I think the reason is in Nevada, once the 30 days to appeal your judgment of conviction is over, direct appeal concludes. The Nevada Supreme Court doesn't have jurisdiction to go back into that direct appeal. It's done. So that's their roadblock. So to get around that in a way and provide the defendant a direct appeal remedy, they allow him to raise it in the post-conviction proceeding. But that, again, if you look at all those three cases that are cited, and the exception in Jimenez, which was a narrow exception, they all went back in, restarted the clock, and said we were back in the direct appeal. So they've reopened the direct appeal. And that's what didn't happen in this case. It wasn't reopened. But here he could have raised any issue that he could have raised on direct appeal, right? It might have resulted in a modification of the judgment. Right. But, again, it has to be. That's not a typical habeas proceeding. No, it's not. I think it's probably not done anywhere else except in the State of Nevada. But that's how they've handled it, and that's why the case came up in the first place in the Ninth Circuit. That's why they threw it in the first place. It seems to me there is some tension in our case law between the way the Thompson court looked at what the Supreme Court did in Jimenez and the way the Randall court looked at Jimenez. But is the tension caused by a difference in California and Nevada law? Because in Thompson, we were dealing with trying to figure out what it means when the California Supreme Court granted but then stayed 122 cases awaiting the outcome of Cunningham and then remanded some of them to the Court of Appeals for further proceedings but dismissed Thompson's. And as you know, I wrote a dissent saying I didn't think that was reopening the appeal, but the majority disagreed, and that's now the law of the circuit. But as I understand it, that's a different proceeding than what Nevada does with these kinds of Lozada petitions. Yeah, it is. You cannot go back into that direct appeal once ñ because they don't have jurisdiction. They've got to address it through the other post-conviction proceeding. Whereas in Thompson, they were still in it in a sense because they dismissed his petition without prejudice as to raise this argument once Cunningham was decided. Should we certify this question to the Nevada Supreme Court and ask them whether or not this is a reinstatement of his direct appeal? Or is that a legal question that we just have to resolve under Jimenez in trying to figure out whether this, quote, unquote, functional equivalent language is akin to reinstating the direct appeal? I don't think it needs to be certified because I think the answer is we can't reopen the direct appeal. We don't have jurisdiction. Let me ask you this. Let me shift gears just a little bit. He also has a claim for equitable tolling and statutory tolling. Statutory tolling doesn't seem to fit here. But equitable tolling, why isn't he entitled to at least an evidentiary hearing on what happened here in the district court on the question of equitable tolling? Well, I think there's a couple of reasons. The first reason is that he's failed to show that his counsel's actions were the but-for and flogsmith cause of the entry of the time bar. He filed at some point, which he didn't even allege in the – in his petition or in his response to the motion to dismiss. He just says that he found out that the direct appeal was not pending. It doesn't say when. But when he found that out, he was able to file a State post-conviction petition with approximately six or seven weeks left in the Federal statute of limitations.   And if that was the case, he could have filed a post-conviction – he could have filed a – Well, he – you know, but he does say that he thought that he had to have an exhausted petition. Well, but even if that was the case, he could have filed a protective petition at that time or during the five years that he was in State court and the Federal statute was told, he could also have prepared and gotten ready to file a Federal petition. And then after the Supreme Court had decided his direct appeal claims and his post- conviction claims, not all of them, because he still claimed and did claim that his counsel, his post-conviction counsel was ineffective, he could still – he still had six to seven weeks after the five years to file a Federal habeas petition, and he didn't. He was not prevented from filing that Federal habeas petition by his trial counsel's failure in the State district court to file a direct appeal. Did he have – I can't recall, but did he have counsel in the district court, U.S. district court? No, he didn't. Did he have – so he filed his petition pro se? He did after he was finished in the Nevada Supreme Court. So after his – after his Lozada petition was resolved, he was assisted by counsel on the Lozada petition, is that right? Yes, he was. By law, he must be. Right. Another reason why – that only happens in direct appeals, too, right, in Nevada? That's true, yes. But I'm just – the point I want to make is that it wasn't his counsel's negligence, and I would argue that it was simple negligence comparable to misinforming him. Well, my understanding is that when did she – she didn't – she didn't tell him she was not going to file an appeal, right? She just didn't file it. She testified at the State evidentiary hearing, a very short evidentiary hearing, that she forgot to file the appeal. Right. So when did she finally tell him that that? It's never alleged in the petition. That's what the district court was concerned with. It had no date, no time, no facts to find or establish a period of equitable tolling, because he didn't allege it in his petition, and he didn't say anything in his opposition to the motion to dismiss. So to answer your second question, which is why shouldn't I go back for an evidentiary hearing, documents not presented to the lower court, the Federal district court, are not part of the record on appeal. This Court has to look at what the district court does. No, I understand. We're only looking at what was before the district court and what he alleged in his petition. So there was nothing there. The only thing he said was, I believe that my direct appeal was pending. All right. That's it. He doesn't show any diligence in contacting his attorney or contacting the court to find out what's going on with my appeal. But he does say that he thought that she was proceeding with it. That's all he says. He just sat back and said, well, I thought it was proceeding. But again, he found out before the Federal statute of limitations expired that his direct appeal was not pending. He was able to file a State postconviction petition seven weeks before the statute expired, and he could have filed a protective petition in Federal court at that point or during the next five years or before the Federal statute of limitations expired six weeks after he was finished in the State district's court, except for the last proceeding, which, by the way, was properly filed. But because it was filed after the statute, the Federal statute expired, he's not entitled to tolling. So you're arguing he can't meet the impediment prong of entitlement to equitable tolling, that there's no causal nexus between. Exactly. There's no nexus or causal connection between the actions of his State district court attorney and not filing his Federal petition, just as the Court in the forgetting name of that case, the Court in Randall v. Crawford said. They found the same thing. There's no causal connection. And that's the same thing in this case. Well, he must have learned before June 27, 2003, that the ---- Well, from the record that we have and from the time that he filed his motion, which they always do in Nevada, to have his attorney withdraw, we know that was somewhere near the beginning, June 1st or so. Right. But we don't know if we don't even know that. Well, we know he filed a State habeas petition on June 27th. That's correct. We do know that. We also know that he filed a motion to have counsel withdrawn 3 weeks before that. Right. But what we don't know, and what he didn't argue, was when he found out. Okay. All right. Thank you, counsel. We'll give you a minute for a rebuttal. I wanted to point out the language I referred to earlier. In Rule 4C, which was implemented or amended in 2008, which implements the Lozada procedure, the Nevada Supreme Court issued this rule or amended the rule to specifically direct what happens when the district court has determined that a defendant's rights have been lost due to counsel's deficient performance. The rule, Nevada Rule of Appellate Procedure 4C1A — I'm sorry, 1B3, directs the district court to prepare and file within 5 days of the entry of the district court's order on the Lozada proceedings a notice of appeal from the judgment of conviction and sentence. And I suggest that that language approximates what happened in Jimenez with regard to putting the defendant back to the place he would have been at the time his appellate rights were still in play. But that wasn't the rule at the time, was it, counsel? At the time of for who? That was not at the time that his Lozada petition was granted. In Valerio's case, no. However. But what — I guess the question I'm asking, don't we have to look at the law as of that time? In the Nevada Supreme Court has told you what the law was at the time. In a case I cited in my reply brief that's not published, but where he specifically states that that procedure, and that was the law in Nevada, post — I mean, pre-rule change and post-Lozada. And did that happen here? Do we have a new notice of appeal? We have findings by the — I'm sorry, did what? Was there a new notice of appeal filed with regard to Mr. Valerio? There was no notice of appeal filed. None. No. No. The attorney — Can you address the equitable tolling impediment prong? The difference between this case and Randall with respect to equitable tolling is that — that although Mr. Valerio wasn't — he was pro se, and so he — you know, these issues weren't presented as we would like them to be, but he clearly lets the Court know that he didn't find out until late in the — in the 10 months or so after his conviction came down that he did not have an appeal. He immediately took the steps to file a State petition in which he alleges his appeal deprivation claim. That petition was timely filed. And that petition would toll the Federal limitations clock as well. I guess the question I'm asking is, there is — are you contesting that there is a relationship between the actions of his former public defender that prevented him from filing in time? Yes, under the State — And what is that? Under the unique circumstances of Mr. Valerio's case, because he filed his — his — both his State petition under 34-726 timely, that would act to toll the Federal limitations period. Once his Lozada proceedings were concluded, he had a year, and the Nevada Supreme Court found he did, a year to file a State petition in State court to allege — I thought a year did. — to allege claims against counsel — appellate counsel, and then that particular petition would have tolled the Federal limitations period. No, wait a second. So if counsel hadn't — Counsel, let me ask you a question. I thought that more than 365 days had run from, what was it, August 12th or whatever that date was. So he still had 46 days or so, right? Yes. Okay. Yes. And you're saying he filed within that 46-day period? He filed within 365 days for EDPA statute limitations as well as the Nevada Supreme Court statute limitations in both instances. So those — his two State petitions would have tolled the Federal limitations period. Okay. So because counsel didn't file his appeal, that was the domino effect that particular act had on his case. So you're saying that's not the fact of Randall? So you're saying that there is no relationship, right? There is a relationship. If — because he was diligent and — but for counsel's negligence in filing the notice of appeal, his petition, his Federal petition, would have been timely. He was timely everywhere else. Okay. I'm sorry. I mean, we'll just look at the dates. You've got me totally confused, but I'll just go back and look at the record. Otherwise, I think we're just going to go round and round. All right. Thank you both. Thank you. Thank you, counsel. I appreciate your arguments. The matter is submitted.
judges: Paez, Berzon, Tallman